# Wytheville.

## KEISTER v. KEISTER AND OTHERS.

### JUNE 27, 1901.

1. DEEDS—*Partition—Husband and Wife as Grantees—Habendum to Husband Only—Case in Judgment.*—A father gave to his son and son-in-law a title bond in the penalty of $1,500, with condition to convey to them certain lands. The obligees entered into possession of the lands, and a few years thereafter the obligor died intestate, and his heirs made a deed of release or quit-claim to the land. This deed makes the wives of the son and son-in-law parties of the second part, but explicitly limits the use and benefit of the property to the son and son-in-law. A few months thereafter the son and son-in-law made partition of the land by several deeds to each other. In these deeds the wives are again made parties of the second part, but the use and benefits are limited to the son and son-in-law, respectively.

*Held:* The wives took no interest in the land. The conveyance by the heirs was a conveyance to the son and son-in-law only, and, in conveying to them, the heirs simply did what the law would have compelled them to do. The subsequent deeds made by the son and son-in-law in which their wives united amounted to simply a partition of the property between them.

Appeal from a decree of the Circuit Court of Giles county pronounced October 5, 1899, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*S. W. Williams,* for the appellant.

*W. J. Henson*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Giles county and presents but a single question of fact, which is, whether the lands that appellant in his bill asks to be partitioned were the maiden lands of his mother, Nancy Keister, deceased, or the property of his father, William Keister, also deceased.

William Keister was twice married; his first wife, Nancy, being a daughter of Isaac Epling, who owned certain lands situated in and near the town of Newport, Giles county. Prior to his death, which occurred between November, 1847, and June 2, 1849, (the exact date not shown), Isaac Epling executed and delivered to his son, Philip Epling, and his son-in-law, William· Keister, jointly, a title bond in which he bound himself in the penalty of $1,500 to make or cause to be made to Philip Epling and William Keister title to certain lots of land at Newport, supposed to contain about ten acres, including a tanyard belonging thereto. This title bond bears date November 19, 1847, and refers to the same land dealt with in the deeds presently to be considered. William Keister and Philip Epling took possession of this property and were living on it June 2, 1849, when the other heirs of Isaac Epling, deceased, by deed, released to them all claim that they, the heirs of Isaac Epling, had therein, describing the land by metes and bounds, and reciting that William Keister and Philip Epling were living thereon. While this release, or quit claim deed, makes William Keister and Nancy, his wife, and Philip Epling and Sophia, his wife, parties of the second part thereto, it explicitly limits the use and benefit of the property to William Keister and Philip Epling, their heirs, &c.

By separate deeds of October 27, 1849, William Keister and Philip Epling partitioned this land between themselves. The deed then made by William Keister and Nancy, his wife, makes Philip Epling and Sophia, his wife, parties of the second part,

and sets apart to them by metes and bounds two lots, aggregating three acres, of the ten acres partitioned, designating one of the lots as that upon which Philip Epling lived, and the other as adjoining, but the use and benefit of the lots is limited to Philip Epling, his heirs, &c.

The other deed made by Philip Epling and Sophia, his wife, names William Keister and Nancy, his wife, as parties of the second part, and sets apart and releases to them the residue of the ten acre tract, but likewise limits the use and benefit of the land to the husband, William Keister, his heirs, &c.

By deed of October 15, 1853, the heirs at law of Isaac Epling, deceased, other than Nancy Keister, in consideration of one hundred dollars in hand paid, by William Keister, conveyed with general warranty to him a tract of forty acres of land situated in Giles county, and owned by Isaac Epling at his death. This land and the seven acres set apart to him by the deed from Philip Epling and wife of October 27, 1849, William Keister had possession of, used, and controlled as his own from the date of said deeds till his death a few years ago, with the exception of several small parcels of it sold off by him many years before his death, and after his first wife's death, which occurred about the year 1858. After William Keister's death, leaving surviving him a widow and a number of children by both his first and second marriage, and descendants of several of his children, who had died, the bill in this cause was filed by appellant, C. W. Keister, one of the children of William Keister's first marriage, the object of which is to have partition of the lands in question among the heirs at law of Nancy Keister, deceased, it being claimed that the lands were the maiden property of Nancy Keister, deceased; that the above-mentioned deeds were made only for the purpose of carrying out a scheme of partition of the lands of Isaac Epling, deceased, adopted by his heirs at law, and conferred no title to the lands therein referred to upon William Keister, but merely set apart to Nancy Keister, his wife, her part of the lands then partitioned.

The widow and the surviving children of William Keister, deceased, by his second marriage, and the infant children of one of them who had died, demurred to and answered the bill, filing with their answer, as an exhibit, the title bond of November 19, 1847, and contending that the property in question was the property of William Keister, deceased, and should be partitioned among his heirs at law.

Upon the pleadings, the exhibits therewith, and the depositions of witnesses, the Circuit Court overruled the demurrer, but sustained the contention of the defendants, and decreed that the property be partitioned among the heirs at law of William Keister, deceased, subject to his widow's dower rights therein.

It is not controverted that the title bond, before mentioned, was executed and delivered by Isaac Epling to William Keister and Philip Epling, and the proof in the cause leaves no room for doubt that they, in the lifetime of Isaac Epling, went into the possession of the property referred to in the title bond, and by virtue of that contract held possession of it jointly until they partitioned it between themselves, and that thereafter William Keister held and occupied the portion alloted to him by that partition, exercising all of the rights of ownership over it until his death. The deeds of October 27, 1849, were evidently prepared by some one unskilled in the preparation of such papers, but they amount to nothing more nor less than a partition of the "Tan-yard" property between William Keister and Philip Epling, although the wife of each is mentioned in the respective deeds with her husband as a party of the second part. This is made all the more apparent by the fact already stated, that in the *habendum* of each deed the use and benefit of the property is expressly limited to the husband. There had been no effort, so far as this record shows, when the two deeds of October 27, 1849, were made, to partition the lands of which Isaac Epling died seized. On the contrary, his heirs at law, other than Nancy Keister, as we have seen, but a short time after his death, and

by their deed of June 2, 1849, released all their claim, as such heirs, in or to the very property referred to in the title bond of November 19, 1847, and in the possession of William Keister and Philip Epling. It is true that Nancy Keister, as well as her husband, William Keister, is named as a party of the second part to the release, but the same is also true as to the wife of Philip Epling, and it is not pretended that she had, or could have had, any other interest in the land released than a mere contingent right of dower in her husband's portion of it. When this release was made by them, the heirs of Isaac Epling, deceased, were but doing what he had contracted by his title bond to do, and what a court of equity would have compelled them to do had they refused. 22 Amer. & Eng. Enc. L. 970.

As to the forty acres conveyed to William Keister by deed of October 15, 1853, there is no ground whatever upon which the contention can rest that it, too, was a part of a partition of the lands of Isaac Epling, deceased, and that the conveyance was for the benefit of Nancy Keister. If it was merely in further-ance of a partition of the lands of Isaac Epling, deceased, begun, as is claimed, in 1849, but shortly after his death, no attempt is made to explain, and no reasonable explanation can be made, for the delay of nearly five years in making this deed. If it was a partition deed, there was no reason for setting out a valuable consideration as moving from William Keister; nor can the omis-sion to mention Nancy Keister in the deed be explained.

It is further contended, however, that it is proven by parol evi-dence in the cause that William Keister did not claim the land mentioned in the title bond and partitioned between him and Philip Epling, but recognized it as being the property of Nancy Keister, his wife. The deposition of witness, C. C. Wingo, is relied on to sustain this contention. He undertakes to say that the deed of June 2, 1849, and the two deeds of October 27, 1849, were partition deeds between the heirs of Isaac Epling, deceased. It is clear, however, from his whole deposition that he could

not have known anything whatever as to what was intended by the parties to those deeds, and therefore, what he says as to them amounts to no more than an opinion of his unsustained by any sort of reason given.

As to the deed of October 15, 1853, being a partition deed, he says he "don't know." He does state that somewhere about the years 1855, 1856, or 1857 he heard William Keister say that the land he lived on, the seven acres, came to his wife from her father; but, on cross examination, he says that he never heard William Keister disclaim the land, and admits that the sum and substance of what William Keister said to him, forty odd years before, was that "the land (the seven acres) came through Isaac Epling, Mrs. Keister's father." This is wholly insufficient to overcome the proof already set out above that the land belonged to William Keister, deceased, as decreed by the court below.

It is further argued that unless these lands are held to have been the property of Nancy Keister, she got no part of her father's estate.

The record fails to show that two other children of Isaac Epling, deceased, got any part of his estate after his death. Whether this was because he had in his lifetime made advancements to them, or for some other reason, is not shown, could hardly be shown at this late day, and is immaterial to the issue here.

We are of opinion that the decree of the Circuit Court is right and should be affirmed.

*Affirmed.*